**GOLDSMITH & EGGLETON, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Court No. 82–5–00624.**

United States Court of International Trade.

March 30, 1983.

Sharretts, Paley, Carter & Blauvelt, Washington, D.C. (Gail T. Cumins, New York City, Peter O. Suchman, Salvatore E. Caramagno, Washington, D.C., and Ned H. Marshak, New York City), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C. (David M. Cohen, Director, Commercial Lit. Branch, Washington, D.C., and Velta Melnbrencis, New York City), for defendant.

*Memorandum Opinion And Order of Dismissal*

BOE, Judge:

The plaintiff in instituting the above-entitled action has challenged the determination by the International Trade Administration (ITA), Department of Commerce, made in the review of an antidumping order initially issued on December 6, 1973, 38 Fed. Reg. 33593. Plaintiff contends that in undertaking administrative review the ITA did not comply with the procedural requirements and by virtue thereof has violated

the plaintiff's constitutional right of due process. Plaintiff has moved to enjoin the liquidation of the subject entries until the court reaches a decision on the merits of plaintiff's claims.

In the proceeding presently before this court the defendant moves to dismiss plaintiff's action on three grounds:

First, the plaintiff lacks standing to challenge the administrative determination in this court.

Second, this court lacks jurisdiction over the subject matter of this action.

Third, the plaintiff has failed to state a claim upon which relief can be granted.

Certain facts in connection with the administrative antidumping proceeding relating to the subject merchandise are pertinent to a determination of this proceeding.

On July 31, 1973, the Secretary of the Treasury determined that the purchase price of polychloroprene rubber exported from Japan was 55% lower than the adjusted home market price of similar merchandise. 38 Fed.Reg. 20630. On December 6, 1973, the United States Tariff Commission's finding that said polychloroprene rubber imports from Japan were injuring a domestic industry was published in the Federal Register. 38 Fed.Reg. 33593. This finding was made pursuant to the Treasury Department's investigation of sales by one manufacturer, Denki Kagaki Kogyo, and one exporter, Mitsui & Co. The investigation did not include sales by Hoei Sangyo Co., Ltd., the exporter from whom the plaintiff purchased the subject merchandise in 1974.[1]

On September 16, 1975, and subsequently on January 25, 1977, the Customs Service in a further investigation determined that shipments of polychloroprene rubber to the United States manufactured by Denki and sold by the exporter, Mitsui & Co. during the period through December 31, 1974 and the period from January 1, 1975 through January 30, 1976 were free of dumping liability. No further administrative action whatsoever was had with respect to the

merchandise imported by plaintiff from Hoei Sangyo Co. until after January 1, 1980. The subject merchandise has not been liquidated as of the date of the institution of the instant action in this court.

The Trade Agreements Act of 1979 transferred the responsibility of determining the applicable antidumping duties from the Customs Service to the International Trade Administration, Department of Commerce. The Act also amended the Tariff Act of 1930 to provide for the annual review of "the amount of any antidumping duty." The Trade Agreements Act of 1979, 19 U.S.C. § 1675. Pursuant to this authority, the ITA on March 28, 1980, published in the Federal Register a notice that it was conducting administrative review of 83 outstanding determinations of dumping including the finding with respect to polychloroprene rubber from Japan. 45 Fed.Reg. 20511–12. The notice did not name the manufacturers or exporters of that merchandise which was subject to the dumping determination.

In the course of its review the ITA submitted a questionnaire to Hoei Sangyo, the Japanese exporter of polychloroprene rubber to the plaintiff. In its response under date of March 6, 1981, Hoei Sangyo allegedly advised the ITA that the plaintiff was the sole purchaser of polychloroprene rubber which it had exported to the United States in 1974. The plaintiff in its complaint alleges that the ITA made no further effort to contact Hoei Sangyo nor any attempt whatsoever to contact the plaintiff regarding its investigation of the polychloroprene rubber finding initially made in 1973.

On January 6, 1982, the ITA found that Hoei Sangyo had provided "inadequate responses" and, accordingly, the ITA had used the best information available to determine the antidumping duty assessment and estimated deposit rates. No reasons were stated wherein the response of Hoei Sangyo

---

1. Denki Kagaki Kogyo manufactured the subject merchandise which Hoei Sangyo exported to the plaintiff in the United States.

was deemed inadequate nor at any time were the importers responsible for paying dumping duties specified in any notice. Based on the dumping determination made in 1973, a preliminary finding of a 55% margin of dumping on Hoei Sangyo's exports of polychloroprene rubber to the plaintiff was made. 47 Fed.Reg. 2389–90. The notice of the preliminary finding stated that interested parties could submit written comments thereon on or before February 16, 1982, and could request a hearing on or before February 1, 1982.

On April 6, 1982, the ITA published a notice of Final Results of Administrative Review of Antidumping Finding on Polychloroprene Rubber from Japan. The notice stated that since the ITA had received no comments on its preliminary findings, the final results were the same as the preliminary findings (55% margin of dumping). 47 Fed.Reg. 14746.

The plaintiff, alleging that it had no notice of the preliminary review or of the final results of the review, has requested the ITA to amend the "final results" by excluding plaintiff's unliquidated entries from assessment and to provide for their inclusion in the next administrative review or, in the alternative, to suspend the application of the "final results" as it related to plaintiff's entries until after the ITA had an opportunity to evaluate data to be supplied by plaintiff. Plaintiff's request was denied by the ITA.

From an examination of the record and the applicable statutes, the court concludes that plaintiff's action must be dismissed without prejudice. This determination is not made on the grounds upon which the defendant predicates its motion to dismiss. It is reached after a careful consideration of the transitional rules and, in particular, section 1002(b)(3) of Title X of the Trade Agreements Act of 1979 (93 Stat. 307):

> (3) Certain Countervailing And Antidumping Duty Assessments.—The amendments made by this title shall apply with respect to the review of the assessment of, or failure to assess, any countervailing duty or antidumping duty on entries subject to a countervailing duty order or antidumping finding if the assessment is made after the effective date. If no assessment of such duty had been made before the effective date that could serve the party seeking review as the basis of a review of the underlying determination, made by the Secretary of the Treasury or the International Trade Commission before the effective date, on which such order, finding, or lack thereof is based, then the underlying determination shall be subject to review in accordance with the law in effect on the day before the effective date.

From the foregoing statute it is clear that if the underlying administrative determination sought to be judicially reviewed is made prior to the effective date of the Trade Agreements Act of 1979 (January 1, 1980) and if no assessment pursuant to such determination has been made prior to the effective date of the statute, then and in that event, a challenge to the underlying administrative determination is subject to judicial review in accordance with the law in effect prior to the effective date of said Trade Agreements Act.

The central issue in this proceeding is whether the transitional rules shall be applied with respect to a judicial review of the initial 1973 dumping determination which has been subject to a preliminary as well as a final review by the ITA pursuant to the provisions of section 751 of the Trade Agreements Act of 1979 (19 U.S.C. § 1675). The defendant contends that the failure of the plaintiff to participate in either the preliminary or the final review proceedings now precludes any challenge relating thereto or the initial underlying determination of 1973 by the plaintiff in this court. In short, the basic question is one as to whether the underlying determination of a dumping finding can thus escape review.

In its preliminary as well as in the final review determination of the dumping finding made by the Secretary of the Treasury in 1973, the ITA adopted as the best information available "the rate calculated during the original fair value investigation"—a

55% margin of dumping. 47 Fed.Reg. 2389–90. Clearly, the dumping finding of 1973 constitutes the underlying determination upon which the section 751 administrative review was conducted by the ITA. No further administrative review had previously been conducted by Treasury with respect to the polychloroprene rubber imported by the plaintiff from the date of the initial dumping finding in 1973 to January 1, 1980. Nor has any assessment of duties at any time been made with respect to the subject imports.

Under the law in effect prior to the enactment of the Trade Agreements Act of 1979, the plaintiff could not challenge the 1973 dumping finding until duties had been assessed. Plaintiff could then challenge said assessment as well as the underlying determination by filing a protest pursuant to the provisions of section 514 of the Tariff Act of 1930.

The anomaly presented by the circumstances in the instant action has been recognized by the Senate Finance Committee in its comments relating to the purpose of the enactment of the transitional rules afore-referred to:

> If no assessment of a countervailing or antidumping duty was made before the effective date which could serve as the basis for a challenge to the underlying finding or order, then a challenge to the underlying finding or order would be subject to judicial review without regard to the amendments made by title X of the bill. For example, suppose an antidumping finding was issued prior to the effective date but no duty was assessed prior to the effective date. This latter fact would mean that no importer possessed the opportunity to challenge the underlying finding in the Customs Court prior to the effective date of the act. The exception to the general rule thus would provide that if a duty is assessed after the effective date, and an importer utilizes that assessment as a basis for challenging the validity of the underlying finding, then judicial review of the underlying finding shall proceed without regard to

the amendments made by title X and shall be based upon the law in effect on the day before the effective date of title X. This provision ensures that rights of review under current law are preserved where necessary.

S.Rep. No. 96–249 at 255–56, U.S.Code Cong. & Admin.News 1979, pp. 381, 641–42. *See also* H.R.Rep. No. 96–317 at 183.

The conclusion reached herein is consistent with the holding by this court in *Southwest Florida Winter Vegetable Growers Association, et al. v. United States,* 84 Cust.Ct. 70, 484 F.Supp. 910 (1980). In that decision, Judge Maletz determined that the underlying determination sought to be reviewed was the preliminary negative antidumping determination, which had been made prior to January 1, 1980. In holding that the law in effect before the effective date of the Trade Agreements Act of 1979 was applicable, a challenge to the preliminary antidumping determination under the provisions of the Trade Agreements Act was, accordingly, barred.

In the instant action the plaintiff has been precluded from challenging the underlying antidumping determination made by the Secretary of the Treasury in 1973 because of the failure on the part of the Treasury Department to assess duties on the subject merchandise upon which a protest could be filed. Although the antidumping determination of 1973 relating to the subject imports are subject to *administrative review* pursuant to section 102(b)(2) of the Trade Agreements Act of 1979, it is not until an assessment of duty is made with respect to the subject merchandise that plaintiff's right to a *judicial review* of the underlying determination ripens.

The court, therefore, finds that the present action of the plaintiff is premature and that, accordingly, no constitutional right of due process of the plaintiff's has been violated in its present untimely effort to challenge the preliminary and final review determination of the underlying antidumping determination of 1973.

Accordingly, the above-entitled action of the plaintiff be and is hereby dismissed, without prejudice.